NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>DAVON JERMELL WHITE,<br>　　　　　　Debtor. | BAP No. CC-24-1154-LSG<br><br>Bk. No. 2:24-bk-14190-NB |
| DAVON JERMELL WHITE,<br>　　　　　　Appellant,<br>v.<br>UST- UNITED STATES TRUSTEE, LOS<br>ANGELES,<br>　　　　　　Appellee. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the Central District of California
Neil W. Bason, Bankruptcy Judge, Presiding

Before: LAFFERTY, SPRAKER, and GAN, Bankruptcy Judges.

## INTRODUCTION

Davon Jermell White ("Debtor") appeals the bankruptcy court's

order dismissing his case under § 707(a).[1]

Seeking the protection of the Bankruptcy Code, Debtor chose to file a

chapter 11 case and reorganize his financial affairs. Unfortunately, Debtor

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

1

failed to provide the type of complete disclosures contemplated by the Code. The bankruptcy court repeatedly warned Debtor that his case was subject to dismissal based on Debtor's lack of transparency.

Nevertheless, Debtor's filings with the court continued to fall short of the disclosures required of a debtor-in-possession under chapter 11. Eventually, the court ordered Debtor to appear and show cause why his case should not be dismissed or converted based on Debtor's incomplete and conflicting disclosures.

After the court's entry of this order, but prior to the hearing, Debtor requested conversion of his case to a chapter 7 case. The court entered an order granting the request for conversion, but instructing Debtor that he would still have to appear and show cause why his case should not be dismissed based on his conduct as a debtor-in-possession.

Ultimately, after holding a hearing in the converted chapter 7 case, the court decided to dismiss Debtor's case. Specifically, the court held that "cause" existed under § 707(a) based on Debtor's failure to adequately disclose his assets, liabilities, income, and expenses. The court also held that "cause" existed under § 707(a)(1), which allows for dismissal where there is "unreasonable delay by the debtor that is prejudicial to creditors."

We do not condone Debtor's actions during the pendency of his chapter 11 petition. Debtor did not come close to satisfying his obligations as a debtor-in-possession. Nevertheless, we hold that binding Ninth Circuit authority precluded the bankruptcy court from dismissing Debtor's

chapter 7 case under the general "cause" provision of § 707(a). We further hold that Debtor's pre-conversion actions as a chapter 11 debtor-in-possession did not qualify as the type of "cause" contemplated by § 707(a)(1). Accordingly, we REVERSE the bankruptcy court's decision and REMAND for further proceedings in accordance with this Memorandum.

<strong>FACTS[2]</strong>

**A.      Debtor's bankruptcy filing and insufficient disclosures.**

On May 28, 2024, Debtor filed a chapter 11 subchapter V petition. Two days later, the court entered a procedures order, requiring that, ahead of the initial status conference in this case, Debtor file a status report containing information required by the Code and the Central District of California's Local Bankruptcy Rules.

Prior to the initial status conference, Debtor submitted a status report and filed his schedules and statements. As thoroughly discussed in the court's tentative ruling issued before the initial status conference, Debtor's filings contained several deficiencies.

Specifically, the court noted that Debtor: (i) failed to include required information in his status report; (ii) did not address how he could proceed in a chapter 11 case when he scheduled only $100 in his account, no net income, and no unencumbered assets in his schedules; (iii) failed to attach a

---

[2] We have taken judicial notice of the bankruptcy court docket and various documents filed through the electronic docketing system. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989); *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

statement to his schedule I showing gross receipts related to real properties; (iv) provided conflicting information in his schedules and statements; and (v) provided such little explanation regarding the lack of any income and assets that neither the court nor any party in interest could have faith in the accuracy of Debtor's disclosures. In light of these issues, the court warned in its tentative ruling that Debtor's case may be dismissed or converted based on the issues highlighted above.

In June 2024, the court held the initial status conference. Both Debtor and his counsel appeared. At the status conference, the court again expressed its frustrations with Debtor's lack of disclosures. The court explicitly informed Debtor that, as a debtor-in-possession, he was required to give the court, his creditors, the subchapter V trustee, and the U.S. Trustee a "big picture" narrative of his assets, liabilities, income, and expenses, and exactly how Debtor intended to proceed with a chapter 11 plan to resolve his financial issues. In other words, the court outlined for Debtor and his counsel the duties attendant to being a debtor-in-possession under chapter 11.

The U.S. Trustee also appeared and echoed the court's concerns about the lack of required information in Debtor's schedules, statements, and status report. Thus, the court set deadlines for Debtor to remedy his deficient disclosures and to file certain required motions, such as a motion for use of cash collateral and a budget motion. Subsequently, Debtor filed

certain amended schedules and statements, as well as a stipulation for use of cash collateral.

Unfortunately, Debtor's disclosures remained deficient. At a continued status conference held on July 16, 2024, the court highlighted the outstanding issues, including that Debtor failed to: (i) file a budget motion; (ii) provide all required information in connection with a late-filed cash collateral stipulation; and (iii) make adequate disclosures in his schedules, including providing any explanation as to why Debtor indicated he does not pay any income tax, any expenses related to his real properties, and why Debtor scheduled receipt of only $8 per month.

In response, Debtor filed another status report, amended schedules I and J, and a budget motion. Both in a tentative ruling and orally at a continued status conference, the court thoroughly outlined the missing pieces to Debtor's disclosures. For instance, the court noted that Debtor's amended schedules reflected a negative income from his rental properties and insufficient information regarding income Debtor anticipated from recent employment with a car dealership. The court also highlighted significant missing information from Debtor's submitted budget, as well as continuing inconsistencies between Debtor's multiple filings. Again, the court explained that Debtor did not satisfy his obligation, as a debtor-in-possession in a chapter 11 case, for full disclosure to the estate.

In light of these continuing problems, the court warned at the July 30 status conference that it would be issuing an Order to Show Cause why Debtor's case should not be dismissed or converted to a chapter 7 case.

**B.    The court's Order to Show Cause and conversion of Debtor's case.**

On August 7, 2024, as promised, the court issued an Order to Show Cause why Debtor's case should not be dismissed with a 180-day bar or converted (the "OSC"). The lengthy OSC set forth in detail the basis for the court's potential conversion or dismissal of Debtor's case. The OSC also contained lengthy instructions requiring Debtor to submit additional information as well as deadlines for Debtor to do so. The court set a hearing on the OSC for September 10, 2024.

On August 22, 2024, Debtor filed a motion to convert his case from a chapter 11 to chapter 7 (the "Motion to Convert"). A few days later, and prior to the court's hearing on the OSC, the court entered an order converting Debtor's case to one under chapter 7 (the "Conversion Order"). Although the court granted Debtor's request for conversion, the court further stated in the Conversion Order that "[n]otwithstanding the conversion of this case to chapter 7," the court's hearing on the OSC "will go forward pursuant to 11 U.S.C. § 707(b) (instead of 11 U.S.C. § 1112(a)) and Debtor is directed to appear to address whether this case should be dismissed with a 180-day bar to being a debtor in bankruptcy pursuant to 11 U.S.C. [§] 109(g)(1)."

Debtor filed a response to the OSC. In his response, Debtor asserted that § 707(b) did not apply to Debtor's case because he did not have primarily consumer debts, as that statute requires. Debtor also argued that, to the extent the court intended to reference § 707(a), which allows for dismissal of a chapter 7 case "for cause," binding Ninth Circuit authorities provide that bad faith does not constitute "cause" for purposes of § 707(a).

On September 10, 2024, the court held a hearing on the OSC. Ahead of this hearing, the court issued a tentative ruling noting that the OSC contained a typographical error and that the court anticipated dismissing Debtor's case under § 707(a), not § 707(b). The tentative ruling then summarized all of Debtor's deficient disclosures; specifically, the court referenced: (i) several issues with Debtor's budget motion; (ii) Debtor's failure to file accurate and complete monthly operating reports, status reports, and schedules; and (iii) Debtor's ongoing inability to explain how he intended to make "proper use of bankruptcy."

The court further stated that Debtor's conversion to a chapter 7 case did not excuse his prior bad acts during the course of his chapter 11 case. The court tentatively held that Debtor should not benefit from the protections of bankruptcy, such as the automatic stay and the receipt of a discharge, if Debtor failed to provide the "quid pro quo of timely, accurate, and complete financial disclosures." The court also held that Debtor's behavior was covered by § 707(a)(1), which provides that "cause" includes "unreasonable delay by the debtor that is prejudicial to creditors."

7

At the hearing on the OSC, the court adopted its tentative ruling and dismissed Debtor's case. At that time, the court addressed Debtor's argument that binding Ninth Circuit authorities did not recognize bad faith as a basis to dismiss a petition under § 707(a). In the bankruptcy court's view, those cases barred courts from dismissing chapter 7 cases based on a debtor's **pre-filing** bad faith conduct, but did not bar courts from dismissing a chapter 7 case based on a debtor's **post-filing, pre-conversion** misuse of the bankruptcy system.

On September 12, 2024, pursuant to its ruling, the court entered an order dismissing Debtor's case with a 180-day bar to refiling another case (the "Dismissal Order"). Debtor timely appealed.[3]

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction over this appeal under 28 U.S.C. § 158.

## ISSUES

1.  Was dismissal under § 707(a) based on Debtor's failure to satisfy his disclosure requirements appropriate?

---

[3] After initiating this appeal, Debtor requested a stay of the Dismissal Order pending this appeal. In December 2024, a motions panel entered an order granting Debtor an injunction pending appeal (the "Injunction Order"). The Injunction Order provided that it would remain in effect until 14 days after entry of a judgment in this appeal. Thus, the Injunction Order will dissolve 14 days after entry of a judgment in accordance with this Memorandum.

8

2.  Was dismissal under § 707(a)(1) based on Debtor's pre-conversion actions as a chapter 11 debtor appropriate?

3.  Did the Dismissal Order violate Debtor's due process rights?

## STANDARDS OF REVIEW

"Whether an individual's due process rights have been violated is a mixed question of law and fact, reviewed de novo." *Wilborn v. Gallagher (In re Wilborn)*, 205 B.R. 202, 206 (9th Cir. BAP 1996).

"[W]e review a bankruptcy court's decision to grant or deny a motion to dismiss for misconduct that constitutes 'cause' for abuse of discretion." *Sherman v. S.E.C. (In re Sherman)*, 491 F.3d 948, 969 (9th Cir. 2007) (citation omitted). However, "we review de novo whether a **type** of misconduct can constitute 'cause' under § 707(a)." *Id.*

De novo review means that we review the matter anew, as if the bankruptcy court had not previously decided it. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

Prior to analyzing the propriety of the Dismissal Order, it is worth detailing the bases of the court's dismissal of Debtor's case. As is evident from the OSC, the transcript of the hearing on the OSC, and the Dismissal Order incorporating the court's several tentative rulings, the court **factually** based its dismissal on Debtor's numerous failures to satisfy his obligations as a debtor-in-possession. We take no issue with the court's findings. Debtor's multiple failures to comply with basic disclosure

requirements necessary to maintain a chapter 11 case are amply supported by the record. Debtor does not dispute those findings on appeal.

The court's **legal** bases for dismissal can be distilled to two related grounds: (i) that Debtor's conduct was an abuse of the bankruptcy process that qualified as "cause" under § 707(a); and (ii) that Debtor's conduct qualified as "unreasonable delay by the debtor that [was] prejudicial to creditors" under § 707(a)(1).

As we discuss in section A, although we appreciate the court's thorough factual record regarding Debtor's failure to comply with basic disclosure requirements, binding Ninth Circuit authority compels us to reverse the court's holding with respect to the general "cause" provision of § 707(a). As we discuss in section B, we further hold that "cause" did not exist for dismissal under § 707(a)(1). Finally, as we discuss in section C, we reject Debtor's argument that the Dismissal Order deprived Debtor of his due process rights.

**A.    The bankruptcy court erred in dismissing Debtor's case under § 707(a) based on Debtor's misconduct during his chapter 11 case.**

Under § 707(a), a court may dismiss a chapter 7 case "only for cause, including," among other things, "unreasonable delay by the debtor that is prejudicial to creditors." § 707(a)(1). Although § 707(a) provides three enumerated examples of "cause," "[t]he grounds that § 707(a) lists as providing 'cause' for dismissal are illustrative and not exhaustive." *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1191 (9th Cir. 2000) (citing, *inter alia*,

§ 102(3) (defining the word "including" to be "not limiting")). In other words, courts may dismiss a petition based on a type of "cause" not explicitly set forth in § 707(a)(1)-(3).

At first glance, Congress's decision to draft § 707(a) in a manner that allows courts to find "cause" outside the explicit examples provided by the statute would seem to give heft to the bankruptcy court's conclusion that Debtor's misconduct during the chapter 11 phase of his case qualifies as "cause" to dismiss his chapter 7 case. However, a closer look at certain binding authorities gives us pause.

### 1. *Padilla*

We begin with the Ninth Circuit's decision in *Padilla*. There, the Ninth Circuit assessed whether a debtor's prepetition bad faith conduct provided "cause" to dismiss his case under § 707(a). *In re Padilla*, 222 F.3d at 1191-94. In *Padilla*, the debtor accumulated significant consumer debt in anticipation of filing for bankruptcy. *Id.* at 1187-88. Based on this conduct, the bankruptcy court concluded "cause" existed to dismiss the debtor's case under § 707(a). *Id.* at 1188.

The Ninth Circuit disagreed with the bankruptcy court's conclusion. *Id.* at 1194. The Court of Appeals first referenced four specific Code provisions that protect creditors in the case of misconduct by a chapter 7 debtor, namely: (i) § 523(a), which allows creditors to except certain types of debt from discharge; (ii) § 727(a), which allows parties in interest to prevent debtors from receiving a discharge for pre- or postpetition

conduct; (iii) § 707(b), which allows for dismissal of a case where a debtor has primarily consumer debts and abuses the provisions of chapter 7; and (iv) § 707(a), which enumerates three explicit grounds that "have been described as being technical and procedural violations of the Bankruptcy Code." *Id.*at 1192 (internal quotation marks omitted).

The Circuit acknowledged that "cause" under § 707(a) was not limited to the three specifically enumerated examples set forth in § 707(a)(1)-(3). *Id.* Nevertheless, the Circuit observed that "[s]tatutory construction canons require that where both a specific and a general statute address the same subject matter, the specific one takes precedence. . . ." *Id.* (internal quotation marks omitted). "Therefore, a debtor's misconduct should be analyzed under the most specific Code provision that addresses that type of misconduct." *Id.*

In light of this, the Circuit explained that, because no provision in the Code "explicitly uses the words 'good faith' or 'bad faith,'" the appropriate question was whether the "nature of the debtor's actions or inactions that have given rise to the 'bad faith' label" were contemplated by specific provisions in the Code. *Id.*

In *Padilla*, the Circuit held that § 707(b) specifically contemplated the type of abuse committed by that debtor, i.e., the accrual of significant credit card debt directly before filing a petition. *Id.* at 1194. Thus, the Circuit held that dismissal under the general "cause" provision of § 707(a) was inappropriate. *Id.*

12

Importantly, the Circuit distinguished "dismissal for cause" in chapter 7 cases from "dismissal for cause" in chapter 11 and chapter 13 cases. *Id.* at 1192-93. In recognizing that courts could dismiss chapter 11 and chapter 13 cases based on a finding of "bad faith," the Circuit reasoned:

> What distinguishes Chapters 11 and 13 from Chapter 7 is the language of the Bankruptcy Code itself and the post-filing relationship between the debtor and his creditors. The Bankruptcy Code specifically mentions good faith in Chapters 11 and 13 when it permits a court to confirm a payment plan only if it is proposed in good faith. No mention of good faith or bad faith is made in Chapter 7. Also, the post-filing debtor-creditor relationship is markedly different in liquidation and reorganization bankruptcies. Chapters 11 and 13, both reorganization chapters, permit the debtor to retain its assets and reorder its contractual obligations to its creditors. In return for these benefits, the debtor must approach its new relationship with the creditors in good faith. Chapter 7, a liquidation chapter, requires no ongoing relationship between the debtor and its creditors and should be available to any debtor willing to surrender all of its nonexempt assets, regardless of whether the debtor's motive in seeking such a remedy was grounded in good faith. . . . The Bankruptcy Code's language and the protracted relationship between reorganization debtors and their creditors lead us to conclude that bad faith per se can properly constitute "cause" for dismissal of a Chapter 11 or Chapter 13 petition but not of a Chapter 7 petition under § 707(a).

*Id.* (cleaned up).

**2.** *Sherman*

Seven years later, the Circuit revisited *Padilla*. *In re Sherman*, 491 F.3d at 970. There, the Circuit summarized the holding of *Padilla* as providing a "two-part inquiry." *Id.* "First, we must consider whether the circumstances asserted to constitute 'cause' are 'contemplated by any specific Code provision applicable to Chapter 7 petitions.'" *Id.* (quoting *Padilla*, 222 F.3d at 1193). "If the asserted 'cause' is contemplated by a specific Code provision, then it does not constitute 'cause' under § 707(a)." *Id.* (citing *Padilla*, 222 F.3d at 1194). "If, however, the asserted 'cause' is not contemplated by a specific Code provision, then we must further consider whether the circumstances asserted otherwise meet the criteria for 'cause' for [dismissal] under § 707(a)." *Id.* (citing *Padilla*, 222 F.3d at 1193-94).

In *Sherman*, the Circuit assessed whether several types of misconduct qualified as "cause" for purposes of § 707(a). As relevant to this appeal, one of the types of misconduct analyzed by the Circuit was the debtor's misrepresentation of his liabilities and expenses in his bankruptcy papers. *Id.* at 973. In holding that such misrepresentations did not provide "cause" for dismissal under § 707(a), the Circuit referenced § 727(a)(4)(A), which prevents a debtor from receiving a discharge if "the debtor knowingly and fraudulently, in or in connection with the case [] made a false oath or account." *Id.* (quoting § 727(a)(4)(A)).

Because § 727(a)(4)(A) covered the specific conduct by the debtor, the Court of Appeals held that the proper remedy was to deny the debtor a

14

discharge under § 727(a)(4)(A), not dismiss the case under § 707(a). *Id.* "To respect the complex statutory scheme that Congress has created to deal with malfeasance associated with bankruptcy petitions, we are loath to hold that a factor constitutes 'cause' unless the Bankruptcy Code regime is incapable of righting wrongs of the kind alleged." *Id.* at 974.

### 3. *Marrama*

*Padilla* and *Sherman* were relatively straightforward in their holdings: where a different provision of the Code specifically covers the debtor's conduct, that conduct may not be the basis for "cause" to dismiss a chapter 7 case under § 707(a).

Somewhat complicating our analysis, however, is the Supreme Court's decision in *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007). *Marrama* addressed whether the Code granted a chapter 7 debtor an absolute right to convert his case to a chapter 13 case. *Id.* at 367-68. There, after filing his chapter 7 petition, the debtor made a number of misstatements in his schedules. *Id.* at 368. Eventually, the debtor moved to convert his case to a chapter 13 case. *Id.* at 368-69. The chapter 7 trustee and a creditor filed objections on the basis of bad faith, and the bankruptcy court denied the debtor's request for conversion. *Id.* at 369-70.

On appeal, the Supreme Court analyzed the relevant provisions in the Code. First, the Court noted that § 706(a) states that debtors may convert a chapter 7 case to another chapter if the case has not previously been converted. *Id.* at 370. Second, the Court referenced § 706(d), which

states that "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." *Id.* at 371. Finally, the Court cited § 1307(c), which provides that a chapter 13 case may be dismissed or converted "for cause" and "includes a nonexclusive list of 10 causes justifying that relief." *Id.* at 373.

The Court noted that none of the above statutes mention bad faith conduct as a basis for cause. *Id.* Nevertheless, the Court held that the debtor's bad faith conduct with respect to his chapter 7 filing precluded conversion to a chapter 13. *Id.* at 373-74. The Court relied heavily on the fact that bankruptcy is meant for the "honest but unfortunate debtor," and that a failure to qualify as such a debtor precludes the ability to be a debtor in a chapter 13 case. *Id.* at 374-75. Thus, the "text of § 706(d) . . . provides adequate authority for the denial" of the motion to convert. *Id.* at 374.

In support of its holding, the Court also referenced "the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process'" stemming from § 105(a) of the Code. *Id.* at 375. The Court also expressed concern that allowing a chapter 7 debtor to convert to a chapter 13 case "may provide a debtor with an opportunity to take action prejudicial to creditors" by, for example, taking possession of property of the estate from the chapter 7 trustee. *Id.*

### 4. *Law*

After *Marrama*, the Supreme Court decided *Law v. Siegel*, 571 U.S. 415 (2014). In *Law*, the Court analyzed whether the bankruptcy court had the

authority, under § 105(a), to surcharge the debtor's exempt property based on the debtor's misconduct. *Id.* at 417.

The Court held that bankruptcy courts lack such authority. *Id.* at 420-23. The Court explained that, although § 105(a) "confers authority to 'carry out' the provisions of the Code," the statute does not authorize courts to take action in contravention of the Code. *Id.*, at 421. Because a different statute, § 522(k), prohibited the type of surcharge ordered by the bankruptcy court, the Supreme Court held that the bankruptcy court exceeded its authority by using § 105(a) in lieu of § 522(k). *Id.* at 421-22.

The Court also concluded that *Marrama* did not compel a different result. *Id.* at 425-26. First, the *Law* Court distinguished *Marrama* by noting that, in *Marrama*, the debtor failed to satisfy an "express condition" of § 706(d), namely, the ability to be a debtor under chapter 13. *Id.* Second, the Court referred to the *Marrama* Court's comments regarding § 105(a) as dicta. *Id.*

### 5. Application of authorities to this case.

Here, there is no dispute that § 707(a) governed dismissal of Debtor's case. At the time the court assessed whether dismissal was appropriate, Debtor's case had been converted to a chapter 7, such that dismissal was governed by § 707. In addition, the court acknowledged that § 707(b) did not apply to Debtor's case, leaving only § 707(a).

As noted above, the court based its dismissal under § 707(a) on Debtor's failure to make complete and accurate disclosures in his schedules, statements, and other court filings.[4]

If *Padilla* and *Sherman* were the only authorities governing this case, our analysis would be relatively straightforward. The specific misconduct on which the court based its dismissal here – whether that conduct is described as "bad faith" or not – is remedied by other provisions in the Code, as further discussed below.

However, we must contend with *Marrama*, an intervening Supreme Court decision. *See Nichols v. Marana Stockyard & Livestock Mkt., Inc. (In re Nichols)*, 10 F.4th 956, 962 (9th Cir. 2021) (intervening Supreme Court decision overrules prior, contradictory Ninth Circuit authority). As explained above, *Marrama* relied on language from §§ 706(a), (d), and 1307(c) to conclude that the debtor's obfuscations during his chapter 7 case

---

[4] In a memorandum supplementing the bankruptcy court's indicative ruling, filed after Debtor initiated this appeal, the bankruptcy court noted that it did not dismiss Debtor's case on the basis of bad faith, and instead dismissed the case based on Debtor's failure to satisfy his disclosure requirements. However, under *Padilla* and *Sherman*, the relevant inquiry is whether a different Code provision covers the conduct that formed the basis for dismissal, not whether the court explicitly finds bad faith or not. As we discuss below, in this case, there is a different Code provision covering Debtor's conduct.

In addition, the court's OSC explicitly stated that the court would be assessing whether Debtor's failure to make accurate and complete disclosures constituted an abuse of the bankruptcy system. As we discuss below, there is little difference between dismissal on this basis and the dismissal based on the debtor's misrepresentations in *Sherman*. Thus, the bankruptcy court's contention notwithstanding, the court's dismissal is appropriately analyzed under *Padilla* and *Sherman*.

18

precluded conversion to chapter 13, because such conduct constituted cause to dismiss or convert a chapter 13 case under § 1307(c).

Although we are confronted with a conversion from a chapter 11 to a chapter 7, as opposed to a conversion from chapter 7 to chapter 13 as was the case in *Marrama*, it is difficult to ignore the similarities between the statutes applicable here and the statutes at issue in *Marrama*. Like § 706(a), which states that a chapter 7 "debtor may convert a case under this chapter" unless certain factors not relevant to this appeal are present, § 1112(a) states that a chapter 11 "debtor may convert a case under this chapter" unless certain factors not relevant to this appeal are present.

In addition, § 706(d) provides that "[n]otwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." Section 1112(f) sets forth identical language. Finally, § 1307(c) provides for dismissal or conversion "for cause," and provides a non-exhaustive list of situations that qualify as "cause." As discussed above, § 707(a) also allows dismissal "for cause," and provides a non-exhaustive list of situations that qualify as "cause."

In *Marrama*, the language of these statutes, coupled with the Court's overarching conclusion that the Code is meant only for the "honest but unfortunate debtor," guided the Court's holding that a chapter 13 case could be dismissed based on bad faith conduct and, as a result, allowing a chapter 7 debtor to convert to a chapter 13 case was essentially futile.

Of course, the Court's general statement that bankruptcy is for the "honest but unfortunate debtor" applies equally to chapter 7 debtors. And, as is evident from the comparison of the statutes above, the statutes at issue here are strikingly similar to the statutes at issue in *Marrama*.

We also note that the Ninth Circuit's holding in *Padilla* represents a minority view.[5] The Third, Fourth, Fifth, Sixth, Seventh, and Eleventh Circuits all hold the opposite, namely, that "bad faith" is an appropriate ground for dismissal under § 707(a). *See Janvey v. Romero*, 883 F.3d 406, 412 (4th Cir. 2018) (aggregating cases showing the split in circuit authority and taking the majority view). At least two of the Circuits explicitly relied on *Marrama* in reaching their conclusion that bad faith provides grounds for dismissal under § 707(a). *See Krueger v. Torres (In re Krueger)*, 812 F.3d 365, 373 (5th Cir. 2016); *Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*, 719 F.3d 1253, 1263 (11th Cir. 2013). Several bankruptcy courts also have disagreed with the holding in *Padilla* on the basis that *Marrama* sets forth a contrary holding. *See, e.g. In re Reece*, 498 B.R. 72, 82 (Bankr. W.D. Va. 2013); *In re Aiello*, 428 B.R. 296, 302 (Bankr. E.D.N.Y. 2010).

Nevertheless, we hold that we are bound by *Padilla* notwithstanding the Supreme Court's decision in *Marrama*. *Marrama* involved a conversion from a chapter 7 to a chapter 13, i.e., from a case in which a trustee had

---

[5] The Eighth Circuit's approach to dismissal under § 707(a) is similar to the Ninth Circuit's; the Eighth Circuit requires "extreme misconduct falling outside the purview of more specific Code provisions" to dismiss a chapter 7 case for "cause" under § 707(a). *Huckfeldt v. Huckfeldt (In re Huckfeldt)*, 39 F.3d 829, 832 (8th Cir. 1994).

control over the debtor's assets and operations to a case in which the debtor would have such control. In fact, the *Marrama* Court itself noted that allowing a chapter 7 debtor an absolute right to convert to a chapter 13 case would provide the debtor an opportunity to retake control of property of the estate and potentially "take actions that would impair the rights of creditors." *Marrama*, 549 U.S. at 375 n.13.

In addition, the Ninth Circuit placed great importance on the difference between a chapter 7 case, on the one hand, and chapter 11 or chapter 13 cases, on the other hand. *Padilla*, 222 F.3d at 1192-93. As explained by the Circuit, unlike chapter 7, chapters 11 and 13 allow debtors not only to retain assets but to continue their relationship with creditors. *Id.* And, while chapters 11 and 13 explicitly invoke good faith as a requirement to plan confirmation, chapter 7 is silent with respect to good or bad faith. *Id.*

Moreover, like the out-of-circuit courts referenced above, we recognize the similarities between the statutes related to conversion of a case **out** of chapter 7 and the statutes related to conversion **into** chapter 7. However, there is a slight difference in the applicable statutes that distinguishes § 707(a) from § 1112(b) or § 1307(c). Unlike § 707(a), § 1112(b) and § 1307(c) allow for dismissal **or conversion to a chapter 7 case** for cause. While this difference may seem elementary, it is integral to why conversions **to** chapter 7 are different from conversions **from** chapter 7.

Specifically, the Code itself contemplates placing a debtor into a chapter 7 case – even against the debtor's will – as an alternative to dismissal of a chapter 11 or chapter 13 case. As acknowledged by the Court in *Marrama*, a bankruptcy court that finds that there is "cause" in the form of bad faith for purposes of § 1307(c) may dismiss **or convert the case to a chapter 7**. *Marrama*, 549 U.S. at 374.[6]

We believe these distinctions place *Padilla* beyond the holding of *Marrama*. Given that proceeding with a chapter 7 case is itself a remedy to bad faith conduct in a chapter 11 or chapter 13 case, and because of the different relationship a chapter 7 debtor has with the estate as compared to chapter 11 and chapter 13 debtors, it is unlikely that *Marrama* overruled *Padilla*.

Further, the Supreme Court's decision in *Law* clarified some of the language in *Marrama* that may have been interpreted to give bankruptcy courts broader authority. Specifically, *Law* held that § 105(a) does not give bankruptcy courts authority to contravene specific provisions in the Code. As a result, *Law* actually bolsters the holding in *Padilla*, which essentially provides that, where available, bankruptcy courts must apply specific remedies set forth in the Code.

---

[6] In addition, the effect of the *Marrama* Court's denial of the debtor's request to convert his case to a chapter 13 was that debtor stay in a chapter 7 case, not dismissal of the case altogether.

Finally, although *Padilla* predates *Marrama*, *Sherman* was decided approximately five months **after** *Marrama*. We presume the Circuit was aware of *Marrama* when it decided *Sherman*.

For all these reasons, we hold that we remain bound by *Padilla*. Under *Padilla*, the conduct that formed the basis of the OSC does not qualify as "cause" under § 707(a) because other provisions in the Code govern such conduct.

There is no meaningful distinction between the conduct at issue in this case and the conduct at issue in *Sherman*. Here, the conduct that formed the basis of the court's dismissal was Debtor's failure to provide accurate or complete information in his filings. In *Sherman*, the conduct at issue was the debtor's misrepresentation of his liabilities and expenses in his filings. Either way, both cases involve inaccuracy in disclosure.

Consequently, as in *Sherman*, the debtor's conduct is governed by § 727(a)(4), which provides for the denial of a debtor's discharge as a remedy in such cases. As a result, we are bound by the holding of *Sherman* and must reverse the court's holding with respect to the general "cause" provision of § 707(a).[7]

---

[7] We appreciate that, under the unusual circumstances of this case, had this case remained in a chapter 11 prior to conversion, the bankruptcy court may have had authority to dismiss Debtor's case under § 1112(b) based on the conduct outlined in the OSC. However, we cannot ignore the Conversion Order. Upon converting Debtor's case, the applicable statute related to dismissal became § 707(a). Our application of that statute is controlled by the Ninth Circuit's holding in *Padilla*.

**B.    The bankruptcy court erred in dismissing Debtor's case under § 707(a)(1).**

The bankruptcy court also referenced § 707(a)(1) as a legal basis for dismissing Debtor's case. Unlike the general "cause" provision of § 707(a), the holding of *Padilla* would not apply to a dismissal under § 707(a)(1) because § 707(a)(1) is one of the explicitly enumerated types of "cause" contemplated by § 707(a).

As stated above, § 707(a)(1) allows for dismissal of a chapter 7 case where there is "unreasonable delay by the debtor that is prejudicial to creditors." Here, the court held that Debtor unreasonably delayed adequate disclosures, and that such delay was prejudicial to creditors because it:

> prevent[ed] them from knowing Debtor's true ability to pay any dividend to creditors (or at least prevent[ed] creditors from obtaining such knowledge without the expense and delay of attempting to extract discovery out of Debtor, which for most creditors would mean throwing good money after bad, given the high cost and low present value of any discovery in attempting eventually to collect their claims).

Dismissal Order, p. 6.

The Panel could not find, and the bankruptcy court did not reference, any cases regarding whether § 707(a)(1) applies to conduct that delayed a case under a different chapter prior to conversion of the case to a chapter 7. In fact, there is a dearth of case law on § 707(a)(1) altogether.

As a preliminary note, our analysis of § 707(a)(1)-(3) necessarily differs from our analysis of the general reference to "cause" in § 707(a). As

24

discussed above, the general reference to "cause" in § 707(a) is broad, and interpretation of that statute is mostly limited by binding Circuit authorities and considerations regarding the nature of chapter 7 cases compared to other chapters.

However, where Congress provides specific examples of abuse that may lead to dismissal, our interpretation is narrowed and limited by the language and context of the statute itself. In addition, we continue to be guided by the general principles related to chapter 7 cases outlined above, namely, that dismissal of a chapter 7 case is an extraordinary remedy, and that chapter 7 contains alternative remedies for courts and parties in interest to police abuse by debtors. *See, e.g.*, § 727(a).

"The starting point in discerning congressional intent is the existing statutory text." *Lamie v. U. S. Tr.*, 540 U.S. 526, 534 (2004). "[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Id.* (internal quotation marks omitted).

However, "[w]here statutory language is ambiguous, courts may look beyond the specific statute itself to the context in which it is used and to relevant legislative history, if it exists." *Ryan v. United States (In re Ryan)*, 389 B.R. 710, 713 (9th Cir. BAP 2008). "Our duty, in matters of statutory construction, is to give effect to the intent of Congress." *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1146 (9th Cir. 2003) (internal quotation marks and citations omitted).

On its face, § 707(a)(1) does not specify whether "delay" includes preconversion delay of the case under a different chapter. In other words, whether its application is broad or limited is ambiguous.

On the one hand, it may be argued that Congress refrained from adding detail to this statute because it intended the statute to have the broadest possible application. However, other considerations lead us to a different conclusion.

Pursuant to § 103(b), "[s]ubchapters I and II of chapter 7 of this title apply only in a case under such chapter." Section 707(a)(1) is part of subchapter I of chapter 7. In addition, under § 103(g), subject to § 901, subchapter I of chapter 11, which includes § 1112(b), applies only to chapter 11 cases. Similarly, § 103(j) provides that all statutes under chapter 13 apply only to cases under chapter 13.

Sections 707, 1112, and 1307 are not identical. Although some subsections in each statute contain similar language, ultimately, Congress took care to draft a different statute applicable to the dismissal or conversion in each section.

For example, like § 707(a)(1), § 1307(c)(1) also allows for dismissal based on "unreasonable delay by the debtor that is prejudicial to creditors." However, § 1112 contains no such language. Instead, unlike § 707(a)(1) and § 1307(c)(1), § 1112(b) contains different examples of cause that are unique to a chapter 11 case, such as a debtor's mismanagement of the estate or inability to confirm a plan.

Taking Congress's decision to draft separate statutes of dismissal related to each chapter in conjunction with § 103's instruction to apply § 707(a)(1) only to chapter 7 cases, we conclude that Congress likely intended § 707(a)(1) to apply only to conduct that delays a chapter 7 case.

To be clear, we disagree with Debtor's contention that the conduct must occur after conversion to chapter 7. Rather, the court must analyze whether the delay caused by the debtor delayed the **chapter 7** case, and whether such delay caused prejudice to creditors in the chapter 7 context.

This is the most straightforward interpretation of the statute, and ensures that courts at all times apply the relevant statute of dismissal or conversion based on the chapter of the debtor's case. In addition, because debtors under different chapters bear different responsibilities, it would make little sense to read "delay" under § 707(a)(1) as inclusive of conduct that would delay a chapter 11 case, but not a chapter 7 case.

On this point, Debtor's case is illustrative. Much of the court's Dismissal Order focused on Debtor's failure to provide adequate disclosures in his budget motion. However, a budget motion is not required in chapter 7 cases, and Debtor's failure to timely submit information in connection with that motion would be irrelevant in a chapter 7 case.

Nor does our interpretation deprive bankruptcy courts of the ability to police debtors' behavior **within the confines of the Code**. *See Law*, 571 U.S. at 421-22. Where the debtor causes "unreasonable delay" while in a

27

chapter 11 or 13 case, the court may assess whether to dismiss or convert the debtor's case under the rubric provided in § 1112(b) or § 1307(c), respectively. Congress has equipped courts with specific statutes applicable to specific chapters, as well as other tools applicable to **all** chapters, such as the ability to sanction certain conduct.

The bankruptcy court's Dismissal Order noted that an interpretation such as this one would excuse a debtor's prior bad acts. We disagree.

Courts have the ability to police a debtor's preconversion delay at the point of conversion. At that time, if the court has discretion over the conversion of a case, then the court has the opportunity to deny a request for conversion or order dismissal instead. If the court does **not** have discretion over conversion and must convert a case because it is required to by statute,[8] then allowing the court to subvert a debtor's absolute right to conversion by dismissing a case immediately after conversion would violate the Code.

To harmonize the Code and address all of the concerns above, we hold that § 707(a)(1) requires an analysis of whether the debtor caused unreasonable delay **to the chapter 7 case** that was prejudicial to creditors. As it stands, the bankruptcy court's analysis was limited to a discussion of delay to Debtor's **chapter 11** case. Nothing in the record demonstrates a

---

[8] We take no position on whether a debtor has an absolute right to conversion under § 1112(a). Here, the court granted Debtor's request for a conversion, and we need not decide whether such conversion was required.

clear pathway of causation linking the conduct the court based its dismissal on to delay in Debtor's chapter 7 case. In fact, at the time the court dismissed Debtor's case, the case had been in chapter 7 for approximately two weeks. Nevertheless, we leave any determination regarding whether Debtor's conduct caused unreasonable delay to the **chapter 7 case** to the bankruptcy court.[9]

## C.     The Dismissal Order did not violate Debtor's due process rights.

Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance." *Id.* (citation omitted); *see also Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'").

Debtor asserts that he was deprived of due process because the court did not provide adequate notice of its intent to dismiss Debtor's case under § 707(a). In Debtor's view, because the OSC was entered when Debtor's case was in a chapter 11, after the court converted Debtor's case, Debtor did

---

[9] Of course, any conduct by Debtor that causes delay moving forward may also trigger dismissal of Debtor's case under § 707(a)(1).

not have an adequate opportunity to respond to the OSC using standards applicable to a chapter 7 case.

We disagree. The record demonstrates that Debtor had ample notice of the court's intent to dismiss his case based on the misconduct outlined in the OSC, as well as in several oral and written admonishments before entry of the OSC. Upon entry of the Conversion Order, the court explicitly warned that Debtor's case remained subject to dismissal. The Conversion Order was entered 15 days before the hearing on the OSC. Debtor had the opportunity to, and in fact did, respond to the OSC, including by making substantially the same arguments Debtor now makes before this Panel.

Under these circumstances, we cannot hold that the court did not "afford a reasonable time" for Debtor to "make [his] appearance." *Mullane*, 339 U.S. at 314. Consequently, the record does not demonstrate a due process violation.

## CONCLUSION

The bankruptcy court erred in dismissing Debtor's case under § 707(a). We therefore REVERSE the court's dismissal and REMAND for the court to assess whether dismissal is appropriate under § 707(a)(1) based on the standard set forth herein. The Injunction Order staying the Dismissal Order will dissolve 14 days after entry of a judgment in accordance with this Memorandum.

30